# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

|  |  |
|---|---|
| **KAREN-BRANDEE WILLIAMS,** | |
| **Plaintiff,** | |
| **v.** | **1:11-cv-512-WSD** |
| **CORINE DEYTON, in her official capacity as Mayor of Forest Park; SPARKLE ADAMS, in her official capacity as Council Member and Mayor Pro Tem of Forest Park; JOE WIMBERLY, in his official capacity as Chairman of the Forest Park Board of Ethics; and CITY OF FOREST PARK,** | |
| **Defendants.** | |

## OPINION AND ORDER

This matter is before the Court on Plaintiff Karen-Brandee Williams' ("Williams") Motion for Consolidated Injunctive Relief [6]. On March 1, 2011, the Court held a hearing on Williams' Motion for a Temporary Restraining Order [2]. The parties agreed at the hearing that this case involves a pure question of law, and consented to the Court making a final judgment on the merits of Williams' case after the parties filed supplemental briefing on the issues.

## I.    BACKGROUND

This case involves the question whether the City of Forest Park's ("Forest Park" or "the City") procedure for determining if a City Council Member has violated Forest Park's Code of Ethics ("Ethics Code") violates the constitutional prohibition on bills of attainder.  The parties do not dispute the material facts of this case.  The only issues are whether the sanctions that the City's Ethics Code authorizes the City Council to impose would, if imposed, constitute bills of attainder, and whether the procedure contained in the Ethics Code authorizing the imposition of those sanctions is, as a result, unconstitutional.

<u>Williams And The Ethics Complaint</u>

Williams is a resident of the City of Forest Park and was elected to the City Council on January 4, 2010.  Compl. ¶ 18.  Williams describes herself as an "active, outspoken, and assertive" member of the council, and says that at times "intense animosity" has existed between her and some other council members. Compl. ¶ 19-20.

On November 16, 2010, three residents of Forest Park filed an ethics complaint against Williams, alleging 25 separate violations of the Ethics Code. Compl. ¶ 26.  Williams requested a hearing on the allegations, and, in response to her request, on January 4, 2011, Forest Park's Board of Ethics set a date and time

for her hearing.  Compl. Ex. B at 1 (Forest Park Resolution No. 11-03).  The Board also recommended the appointment of a hearing officer to conduct the hearing and render a decision on behalf of the Board of Ethics.  Id.  On January 18, 2011, the Forest Park City Council, as recommended by the City Attorneys, approved the appointment of an outside lawyer to serve as the hearing officer during the proceeding at which the ethics allegations against Williams would be heard.  Id. at 2.  The Council authorized the hearing officer to enter a written decision on behalf of the Board.  Id.

The Ethics Ordinance

Forest Park codified its Ethics Code as Article E of the City's Code of Ordinances.  The Declaration of Policy states: "It is essential to the proper administration and operation of the City that the members of its governing authority be, and give the appearance of being, independent and impartial; that public office not be used for private gain; and that there be public confidence in the integrity of the City government."  Ethics Code § 2-1-41.  The Code states that these goals are impaired when the City's governing authorities have or appear to have conflicts of interest, and thus "the public interest requires that the City protect against such conflicts of interest by establishing appropriate ethical standards with respect to the conduct of the members of the governing authority."  Id.

3

The Ethics Code establishes a Board of Ethics ("the Board") composed of five members, each appointed to two-year terms.  Id. § 2-1-55.  Complaints alleging violations of the Ethics Code may be initiated by any person, id. § 2-1-59(a), and the Board is responsible for investigating and deciding alleged violations, id. § 2-1-59.  When the Board receives a complaint, it may dismiss the complaint after conducting an initial review, decide no violation occurred, order a hearing to determine if a violation occurred, or conduct further investigation into the complaint.  Id. § 2-1-59(n).

After the Board makes a decision, it issues "written findings of fact and conclusions" that are deemed "an initial decision."  Id. § 2-1-59(n)(5).  If neither the complainant nor the person against whom the complaint is lodged files with the City Council objections to the findings or the City Council does not request review on its own motion, the initial decision becomes the final decision of the City.  Id. § 2-1-60(a).  If the complainant or the complained-about person requests review "the City Council shall have all the powers it would have had in making the initial decision and, if deemed advisable, the City Council may take additional testimony or remand the case to the Board for that purpose."  Id.

Either the person charged with ethics violations or the complainant are entitled to judicial review of the City Council's final decision.  Id. § 2-1-69(a).

The review is conducted by the Superior Court of Clayton County and "shall be limited to an inquiry of whether there was any evidence before the City Council which supported the decision of the Council."  Id. § 2-1-69(b).

The Ethics Code provides that a violation of the Ethics Code "shall be a misdemeanor."  Id. § 2-1-65.  The Code enumerates the possible consequences of a violation:

> Any person[s] violating this policy is subject to:
>
> (1)   Written and oral reprimand by the City Council; and/or
> (2)   A fine greater than one hundred dollars ($100.00) but less than five hundred dollars ($500.00) to be imposed by a vote of the City Council; and/or
> (3)   Request for resignation by the City Council; and/or
> (4)   Removal from office in accordance with all applicable state and local laws.

Id. § 2-1-65.  The enumerated consequences "shall be cumulative and not exclusive of each other or of any other penalties which may be imposed pursuant to any other laws or policies."  Id. § 2-1-67.

The City's municipal government is formed pursuant to a charter enacted by the Georgia General Assembly in 1988.  See Editor's Note to Charter for the City of Forest Park.  The charter authorizes the removal of a city council member by a vote of the other five council members, for any one or more of six causes:

> (1)   incompetence, misfeasance or malfeasance in office;
> (2)   conviction of a crime involving moral turpitude;

(3)   failure at any time to possess any of the qualifications of office as provided by this charter or by law;

(4)   knowingly violating any express prohibition of this charter;

(5)   abandonment of office or neglect to perform the duties thereof; or

(6)   failure for any other cause to perform the duties of office as required by this charter or by state law.

Charter for the City of Forest Park, art. V, § 5.16(a).

<u>Procedural Background</u>

The hearing on the complaints against Williams was scheduled to be conducted on March 1, 2011, by the appointed hearing officer.  On February 22, 2011, Williams filed her Verified Complaint [1] initiating this lawsuit, alleging that the procedure created by the Ethics Code is an unconstitutional bill of attainder. Compl. ¶ 33.  She seeks declaratory relief that the procedure is a bill of attainder, and injunctive relief prohibiting further enforcement action against her.  Compl. at 13-14.

The original hearing date was postponed until March 8 to accommodate the Court's hearing on Williams' Motion for a Temporary Restraining Order, which occurred on March 1, 2011.  At the hearing, the parties agreed that there were no disputed issues of fact in this case, and that no evidentiary hearing would be required.  The parties further agreed that they would file substituted briefing on the merits of the legal issues in this case, and that the Court would issue a final decision on Williams' requests for declaratory and injunctive relief.  The City also

agreed to further postpone the hearing on the ethics charges, to give the Court

adequate time to issue its opinion in this case.  The hearing is now scheduled to be

held on March 15, 2011.  The parties have filed their supplemental pleadings on

the issues [6, 8], and the Court turns to the merits of Williams' Complaint.

## II.    DISCUSSION

### A.    Legal Standard

The parties agreed that the resolution of this matter depends on the

disposition of a single question of law: does the procedure created by the

challenged portions of the City's Ethics Code violate Article I, Section 10 of the

United States Constitution, which prohibits states from passing a bill of attainder?[1]

Because this is a final adjudication on a request to enjoin enforcement of the

procedure for determining and, if appropriate, responding to the ethics charges

against Williams, she must show that the procedures that the Ethics Code

---

[1] For this reason, the parties specifically agreed an evidentiary hearing is not
necessary in this case.  See McDonald's Corp. v. Robertson, 147 F.3d 1301, 1311
(11th Cir. 1998) (evidentiary hearing unnecessary material facts are not in dispute).
The parties have also agreed that this Order should be the final Order granting or
denying Williams' request for declaratory and injunctive relief.  See Fed. R. Civ.
P. 65(a)(2) ("Before or after beginning the hearing on a motion for a preliminary
injunction, the court may advance the trial on the merits and consolidate it with the
hearing."); Drummond v. Fulton Cty. Dep't of Family & Children's Servs., 563
F.2d 1200, 1204 (5th Cir. 1977) (consolidation of preliminary injunction with trial
on the merits is "a responsible exercise of judicial discretion" where dispute is
essentially legal in nature and prompt action is needed).

authorizes the City Council and Board of Ethics to commence against her violate her right against the imposition of punishment by a bill of attainder. Besides establishing that her right has been violated, Williams also must show that: there is no adequate remedy at law for the violation of this right; that irreparable harm will result if the Court does not order injunctive relief; and that an injunction would not be adverse to the public interest. See Thomas v. Bryant, 614 F.3d 1288, 1317 (11th Cir. 2010); see also KH Outdoor, LLC v. City of Trussville, 458 F.3d 1261, 1268 (11th Cir. 2006) ("For a permanent injunction, the standard is essentially the same [as that for a preliminary injunction], except that the movant must establish actual success on the merits, as opposed to a likelihood of success.").

B.    Standing And Ripeness

The City argues it is currently speculative whether Williams will receive any particular penalty, and thus Williams lacks standing to challenge the constitutionality of the procedure for imposing a penalty. To demonstrate standing to bring a claim in a federal court, Williams must show that: "(1) [she] has suffered, or imminently will suffer, an injury-in-fact; (2) the injury is fairly traceable to the defendants' conduct; and (3) a favorable judgment is likely to redress the injury." Mulhall v. UNITE HERE Local 355, 618 F.3d 1279, 1286

(11th Cir. 2010).  The Court understands the City's argument to be that the alleged injury in this case is not imminent because it is speculative.

This argument is related to the requirement that a claim presented to a federal court be "ripe" for consideration.  See id. (noting relation between ripeness and the "imminence" requirement under the injury-in-fact prong of the standing requirement).  "[F]or the controversy to be ripe, the complained-of injury must be immediate or imminently threatened."  Wilderness Soc'y v. Alcock, 83 F.3d 386, 390 (11th Cir. 1996).  The question of imminence for standing purposes goes to how likely the challenged actions are to cause an injury to a plaintiff, while ripeness concerns whether the occurrence of the challenged actions is contingent upon some future event that may not occur.  See Mulhall, 618 F.3d at 1291 n.11. Standing asks whether the plaintiff is the correct person to bring the suit, while ripeness asks whether this is the correct time for bringing it.  Wilderness Soc'y, 83 F.3d at 390.  The Court thus focuses on whether Williams' claim is ripe.

"'A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'"  Harris v. Mexican Specialty Foods, Inc., 564 F.3d 1301, 1308 (11th Cir. 2009) (quoting Texas v. United States, 523 U.S. 296, 300 (1998)).  In this case, whether the City Council actually dispenses the disputed penalties is contingent first on the Board

and the City Council finding that Williams committed on or more ethics violations and, second, making a decision about what, if any, sanction should be imposed. The likelihood of this event occurring is indeterminate, and the Court cannot guess the probability of the City in fact imposing a penalty.  The question before the Court is whether the contingent nature of the alleged harm means that Williams' claim is not ripe, thereby divesting the Court of jurisdiction over the matter.  The answer depends on whether the challenge is construed as facial or as-applied.

The ripeness requirement "applies differently to facial and as-applied challenges." Harris, 564 F.3d at 1308.  A facial challenge to a law claims that the law is always and everywhere unconstitutional, and succeeds only if the statute can never be applied in a constitutional manner.  Id.  An as-applied challenge claims only that the statute is unconstitutional under the facts of a particular case or a particular party.  Id.  "In the context of a facial challenge, a purely legal claim is presumptively ripe for judicial review because it does not require a developed factual record." Id.  An as-applied challenge, on the other hand, first requires the development of a factual record for the court to consider.  Id.

An as-applied challenge to the Ethics Code is not ripe for adjudication at this time.  Not only is the Court unable to determine whether a penalty will be imposed, but the Court will not presume to guess which penalty or combination of penalties,

if any, might be imposed.  For the Court to evaluate each possible outcome and rule whether each one would or would not constitute a bill of attainder would be pure speculation at best and may well be unnecessary altogether.

A facial attack, on the other hand, is "presumptively ripe for judicial review."  Harris, 564 F.3d at 1308.  To succeed on a facial attack, Williams must demonstrate that the procedure established by the Ethics Code for determining whether violations have occurred is everywhere and always unconstitutional.  This requires Williams to show that all the penalties under the Ethics Code would constitute bills of attainder, so that the proceedings cannot result in a legitimate outcome because either the City Council issues a bill of attainder, or Williams is acquitted in a legislative trial the legislature was not authorized to conduct.

Harris demonstrates this distinction.  In Harris, the defendant was sued under the Fair Credit Reporting Act, which authorized statutory damages, and the defendant challenged the authorization of statutory-damages as unconstitutionally excessive.  564 F.3d 1307-08.  He asserted his challenge after the civil case was filed against him but before he had been found liable and before damages had been assessed.  Id.  Even though it was possible the defendant would not be found liable at all, the trial court ruled that the statutory damages provision was unconstitutional, both as-applied and facially, because "its verdicts will always be

11

unconstitutionally excessive." Id. at 1308-09.  The Eleventh Circuit found that the trial court erred by considering the as-applied challenge because it would not be ripe until the jury reached a verdict.  Id. at 1309.  But the court also held that the facial challenge was ready for adjudication: "Although the district court issued its order prior to trial, we may consider the merits of its . . . facial rulings because they do not require a detailed examination of the facts of the instant case."  Id. at 1309.[2]

As in Harris, no "verdict" has been reached in this case, but the Court can consider a facial attack to the Ethics Code because it would "not require a detailed examination of the facts of the instant case."  Id.  Williams is permitted to bring a facial challenge to the Ethics Code, which requires her to prove that the Ethics Code is unconstitutional under every possible application.

C.      The Bill Of Attainder Claim

Although the Court finds that Williams' claim may proceed as a facial challenge, the distinction is not significant in this case because the ordinance and process here is not a bill of attainder.  Historical experience and legal precedent indisputably support that legislative bodies possess the inherent power to discipline their members by reprimand, censure, fine, or expulsion.  Williams is a member of

---

[2] The Eleventh Circuit ultimately reversed the trial court on the merits of the facial excessiveness claim.

a legislative body, which has the right to discipline her, and any discipline methodology does not implicate the prohibition on bills of attainder.

The Constitution forbids states from passing bills of attainder: "No State shall . . . pass any Bill of Attainder . . . ."  U.S. Const. art. I, § 10, cl. 1.  A bill of attainder is "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." Selective Serv. Sys. v. Minn. Pub. Interest Research Group, 468 U.S. 841, 846-47 (1984) (quoting Nixon v. Adm'r of Gen. Servs., 433 U.S. 425, 468 (1977)).  A bill of attainder therefore contains "specification of the affected persons, punishment, and lack of a judicial trial."  Id. at 847.  Whether a law inflicts punishment, in turn, depends upon "(1) whether the challenged statute falls within the historical meaning of legislative punishment; (2) whether the statute, viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes; and (3) whether the legislative record evinces a congressional intent to punish."  Id. at 852 (internal quotation marks omitted).

The City argues that these factors must be applied to the Ethics Code itself. Because the rules of conduct prescribed in the Code do not specify Williams, and because their restrictions have the plainly non-punitive purpose of promoting governmental integrity, the City argues that the Ethics Code does not violate the

bill of attainder prohibition.  The appropriate question on this facial challenge, however, is not whether the Code itself is the bill of attainder, but whether it provides for a process that inevitably constitutes an illegal bill of attainder.  If the City Council finds that Williams violated the Ethics Code and imposes a penalty, the order, motion, or resolution sanctioning Williams would specify her, and it would be imposed without the protections of a judicial trial.  The Court thus concludes that its inquiry must center on the penalties authorized.

For the reasons discussed below, the Court finds that a legislative body's imposition of discipline on a member of the legislative body does not implicate the prohibition on bills of attainder.  Even if it did, historical experience demonstrates that such actions are highly unlikely to be deemed "legislative punishment," as the Supreme Court used that term in <u>Nixon</u> and <u>Selective Service System</u>.

### The Legislative Power To Regulate Members' Conduct

Williams' claim that a legislative body may not penalize its own members for misbehavior is a novel one.  The parties have not cited, and the Court's research has not revealed, any cases challenging a legislative body's punishment of a sitting member of that body on bill of attainder grounds.  This is likely because the historic power of legislative bodies to punish their own members is beyond dispute.  Indeed, insofar as the power of a legislative body to expel one of its own

is concerned, the historic practice dates back at least to the Sixteenth Century.  See

Powell v. McCormack, 395 U.S. 486, 524 & n. 48 (drawing from English

precedent and noting examples of the House of Commons expelling members for

misconduct in 1585 and 1628).

The closest example of a case challenging a legislature's power to punish its

own members is Zilich v. Longo, 34 F.3d 359, 361-63 (6th Cir. 1994), which

involved the reprimand of a *former* council member.  Zilich arose out of a heated

political dispute over whether a city council member met the residency

requirement for his elected office.  The council member did not run for re-election,

and after the new city council members were elected, they passed a resolution

expressing "disapproval and outrage" that the former council member had

disregarded the residency requirements.  The city council demanded that the

former council member return all the compensation he received during his tenure

on the council.  The council also passed an ordinance authorizing the city's

attorney to take legal action to attempt to collect the salary that had been paid to

the council member.  Id. at 361-62.  The council member sued, alleging that both

the resolution and the ordinance were bills of attainder.

Because the ordinance only authorized the city attorney to seek relief in a

judicial proceeding, the Sixth Circuit focused on the resolution that expressed

15

disapproval and outrage.  The court noted that the prohibition on bills of attainder "establishes that there are certain types of decision that are inappropriate for *legislative* resolution."  Id. at 362 (internal quotation marks and alterations omitted).  "The legislative act of judging one's own members cannot be deemed a matter inappropriate for legislative resolution when the city charter specifically grants the council this power."  The Sixth Circuit specifically noted that "the Bill of Attainder Clause does not outlaw legislative action against a specific legislator.  Legislative bodies may censure, suspend or otherwise discipline a member.  They have done so under English and American law for centuries."  Id. (citing Powell, 395 U.S. at 522-38).

In Whitener v. McWatters, the Fourth Circuit also discussed the historic power of legislatures to regulate and discipline their own members, in the context of an allegation by a county board member that he was disciplined by the county board in violation of the First Amendment.  112 F.3d 740, 744 (4th Cir. 1997).  In that case, the county board had censured the county board member for using abusive language during board meetings, and had further disciplined him by removing his committee assignments.  He complained that the censure and discipline were unlawful acts of retaliation against his exercise of his First Amendment rights to speak as he wished during the meetings.  See id. at 742.  In

rejecting his challenge, the court noted that legislatures have the inherent power to punish their own members: "Americans at the founding and after understood the power to punish members as a legislative power inherent even in 'the humblest assembly of men.'" Id. at 744 (quoting Joseph Story, Commentaries on the Constitution of the United States § 419).

This legislative power is plainly evidenced in our federal Constitution, which provides for the power to discipline members of Congress.  The Constitution provides that each house of Congress "may . . . punish its members for disorderly behavior, and, with the concurrence of two thirds, expel a member."  U.S. Const. art. I, § 5, cl. 2.  Thus, where Congress's own members are concerned, the Constitution not only does not prohibit "punishment" by Congress, but explicitly authorizes it.  Id.  As early as 1797, the Senate exercised its power under this section, when it expelled Senator William Blount, declaring him "'guilty of a high misdemeanor'" that was "entirely inconsistent with his public trust and duty as senator.'"  In re Chapman, 166 U.S. 661, 670 (1897) (quoting the story as recounted in 1 Joseph Story, Commentaries on the Constitution of the United States § 838, and Sergeant, Constitutional Law 302 (2d ed.)).

This power is not particularly narrow.  In dicta, the Supreme Court once stated that this legislative disciplinary power may extend even to imprisonment:

> As we have already said, the Constitution expressly empowers
> each House to punish its own members for disorderly behavior. We
> see no reason to doubt that this punishment may in a proper case be
> imprisonment, and that it may be for refusal to obey some rule on that
> subject made by the House for the preservation of order.

Kilbourn v. Thompson, 103 U.S. 168, 189-90 (1880).  While Congress has never

imprisoned one of its members and may lack the power to do so—see United

States v. Traficant, 368 F.3d 646, 651 (6th Cir. 2004) (Congress's "power to

imprison its members is uncertain," because Kilbourn passage is dicta and

Supreme Court has never had occasion to squarely rule on the issue)—the power is

at least so broad as to encompass reprimands, censures, fines, requests for

resignation, or expulsions.  See generally Jack Maskell, Cong. Research Serv., RL

31382, Expulsion, Censure, Reprimand, and Fine: Legislative Discipline in the

House of Representatives (2005) (discussing authority for and historical examples

of the House of Representatives disciplining its members through expulsion,

censures, reprimands, and fines).

The Constitution similarly does not limit the grounds upon which a house of

Congress may punish one of its members.  Indeed, the power to discipline

membership of a legislative body is embedded in the Constitution, not a violation

of it.  "The right to expel extends to all cases where the offense is such as in the

judgment of the senate is inconsistent with the trust and duty of a member."  In re

<u>Chapman</u>, 166 U.S. at 670.  Forest Park's Ethics Code prohibits certain conflicts of interest or misuses of power that may arise in the execution of a council member's duties.  Legislative inquiry into and subsequent punishment of conduct impacting the institutional integrity of the legislative body are indisputably within the scope of the proper exercise of the legislative function.

The difference between the example of Congress and the City of Forest Park is that the Constitution expressly authorizes Congress to punish and expel its own members, while no such affirmative grant is made to other legislative bodies.  One could argue that the prohibition on bills of attainder does not implicate Congress's punishment or expulsion of its own members solely because of this affirmative grant of power.  That cannot be the case.  First, because it is illogical that the drafters and ratifiers of the Constitution would find bills of attainder of sufficient concern that they would twice prohibit them in the Constitution, and then, in the same article, explicitly establish the procedure by which Congress would lawfully engage in it.  The necessary, reasonable conclusion is that the definition of a bill of attainder simply is not, and never has been, understood to include a legislative body's discipline of its own member.

More importantly, the Constitution's affirmative grant of power to each house of Congress to punish and expel its own members is not duplicated for the

benefit of the States.  If Congressional disciplinary actions are bills of attainder that are permitted solely because of the Constitution's affirmative grant of power, the implication is that such power does not exist in the States, and therefore analogous state constitutional provisions are invalid.  See, e.g., Ga. Const. art. III, § IV, ¶ VII ("Each house . . . shall have power to punish [its members] for disorderly behavior or misconduct by censure, fine, imprisonment, or expulsion; but no member shall be expelled except by a vote of two-thirds of the members of the house to which such member belongs"); Ala. Const. art. IV, § 53 ("Each house shall have power to determine the rules of its proceedings and to punish its members and other persons, for contempt or disorderly behavior in its presence; to enforce obedience to its processes; to protect its members against violence, or offers of bribes or corrupt solicitation; and with the concurrence of two-thirds of the house, to expel a member . . . ."); Fla. Const. art. III, § 4(d) ("Each house may punish a member for contempt or disorderly conduct and, by a two-thirds vote of its membership, may expel a member.").[3]  Again, the necessary, reasonable conclusion is not that invocation of the powers granted under those state

---

[3] Notably, all three constitutions contain their own prohibition against bills of attainder, and the drafters apparently saw no contradiction between banning bills of attainder and simultaneously granting their legislatures the power to "punish" their members.  See Ga. Const. Art. I, § I, ¶ X; Ala. Const. Art. I, § 19 (prohibiting bill of attainder of treason); Fla. Const. Art. I, §10.

constitutional provisions—without doubt present in most if not all state constitutions—would result in unconstitutional bills of attainder, but that such action cannot be a bill of attainder because a bill of attainder is not understood to encompass those types of actions.  Put another way, the authority of a legislative body to discipline its members is embedded in the Constitution because such activity and process is not a bill of attainder.  Rather it is sanctioned by the Constitution not a violation of it.

In summary, disciplinary actions taken by legislatures against one of their members are within the historical and proper power of the legislative function and are not bills of attainder.  The cases that Williams cites do not say otherwise.  In Caudell v. City of Toccoa, the city commissioner was not removed from the city commission by a vote of that body.  153 F. Supp. 2d 1371, 1379-80 (N.D. Ga. 2001).  Instead, a single commissioner convinced the Georgia General Assembly and the Georgia Governor, entities separate from the city commission, to force the plaintiff out of his position.  See id.  Similarly, in Fulton v. Baker, the challenged statute was a bill of attainder because the Georgia General Assembly passed a law cutting short the plaintiff's term as a county commissioner.  410 S.E.2d 735, 736-37 (Ga. 1991); see also Cook v. Smith, 288 Ga. 409, at *4-5 (2010) (law passed by

General Assembly and signed by Governor that cut short term of chairman of a county board of education was a bill of attainder).

<u>Are The Ethic Code's Potential Penalties "Punishment" Under The Bill Of Attainder Clause?</u>

Even if it were possible for a legislative body's discipline of one of its members to constitute a bill of attainder—and the Court finds that it is not possible under these circumstances—the previous discussion would at least demonstrate that the imposition of the penalties that the Ethics Code authorizes would not meet the definition of a bill of attainder because the penalties are not "legislative punishment."

Three factors determine if a sanction is a legislative punishment for bill of attainder purposes: historical, functional, and motivational.  Whether a penalty is a legislative punishment depends on "(1) whether the challenged statute falls within the historical meaning of legislative punishment; (2) whether the statute, viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes; and (3) whether the legislative record evinces a congressional intent to punish."  <u>Selective Serv. Sys.</u>, 468 U.S. at 852.  A court must weigh these three factors together to determine if a sanction is a legislative punishment for bill of attainder purposes.  <u>See</u> <u>Consol. Edison Co. of</u>

N.Y., Inc. v. Pataki, 292 F.3d 338, 350 (2d Cir. 2002) (citing Nixon, 433 U.S. at 473-78).

The authorities showing that legislative discipline of a legislator is not a bill of attainder also stand for the proposition that such actions do not fall within the historical meaning of punishment.  Williams cites cases demonstrating that, in some circumstances, an employer's reprimand of an employee may be punishment. See Keenan v. Am. Cast Iron Pipe Co., 707 F.2d 1274, 1277 (11th Cir. 1983). Similarly, fines are punitive in some circumstances, as is the termination of an employee's position.  See Caudell v. City of Toccoa, 153 F. Supp. 2d at 1379-80. If the City Council were imposing punishment on non-city council members, the analysis may well be different.  But the centuries-old precedent of legislative bodies disciplining their members at both the state and federal level show that the sanctions contemplated in this case do not meet the historical definition of legislative punishment as that term is understood for bill of attainder purposes.

The four authorized penalties also serve the non-punitive function of maintaining the public's trust in the City Council and preserving the Council's institutional integrity.  The Supreme Court has described Congress' power to discipline its members as serving the functional goal of preserving institutional integrity: "Unquestionably, Congress has an interest in preserving its institutional

integrity, but in most cases that interest can be sufficiently safeguarded by the exercise of its power to punish its members for disorderly behavior and, in extreme cases, to expel a member with the concurrence of two-thirds." Powell, 395 U.S. at 548. "When a legislative body seeks to remove an official, the function is not primarily to punish individuals, but to protect the nation from harm done or threatened by an official who abuses power or subverts the Constitution." Laurence H. Tribe, 1 Am. Const. Law 158 (3d ed. 2000) (citing Joseph Story, Commentaries on the Const. § 803, at 586-87 ("It is not so much designed to punish an offender, as to secure the state against gross official misdemeanors.")). Viewed in this context, the potential penalties—reprimand, request for resignation, small fine, and expulsion—are functionally tailored toward maintaining public trust in government, preserving institutional integrity, and protecting the public from the predations of those who would abuse their power. The function is not primarily punitive in nature.

Williams argues that the potential penalties that the Ethics Code authorizes evince a punitive motive. The Ethics Code names violations of the Code as misdemeanors, the monetary sanctions are "fines" and not "civil penalties" or "administrative sanctions," and the Code authorizes "the layering of penalties." The Court does not see how authorizing a combination of penalties or allowing the

24

imposition of other penalties authorized elsewhere in the City's Code of Ordinances demonstrates a punitive motivation.  The use of the labels "misdemeanor" and "fine" may be some evidence of legislative intent, but not much.  The Ethics Code's "Declaration of Policy," on the other hand, demonstrates different motivations: "the proper administration and operation of the City"; "that the members of its governing authority be, and give the appearance of being, independent and impartial; that public office not be used for private gain; and that there be public confidence in the integrity of City government."  Ethics Code § 2-1-41.  The Court believes this straightforward statement of motivation, at least in this context, outweighs the single use of two labels, misdemeanor and fine, that would otherwise at most demonstrate an ambiguous motivation for the penalties.

Weighing the three factors—historical, functional, and motivational—the question is not a close one.  The penalties that the Ethics Code authorizes the City Council to impose on council members for violations of the Code are not "legislative punishment" for bill of attainder purposes.

## III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff Karen-Brandee Williams' request for a declaration that the challenged portions of the Ethics Code are

unconstitutional bills of attainder, her request for preliminary injunctive relief prohibiting enforcement of the Ethics Code against her, and her request for permanent injunctive relief prohibiting enforcement of the Ethics Code against her, are **DENIED**.

> **IT IS FURTHER ORDERED** that this case is **DISMISSED**.

> **SO ORDERED** this 14th day of March, 2011.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

26